Sears Steevens and another v. Joseph Earles: Same v. Alexander Lowe: Same v. Alanson Finch: Same v. William Bedal.

*Bankrupt: Residue of property.* A bankrupt has a right to the residue of his property which is left after all debts proved and all expenses of the bankruptcy proceedings are paid in full.

*Bankruptcy: Trust terminated: Property undisposed of, reverts.* Where there are no debts proved, and all possible claims have outlawed, and all expenses are

paid, the trust is terminated, and all property undisposed of reverts to him or to his estate.

*Trust: Residue of property: Reconveyance.* The interest remaining in property after an express trust has been satisfied, is a legal estate and requires no reconveyance, where there has been no change in the property or the title held in trust.

*Heard April 19. Decided April 23.*

Error to St. Clair Circuit.

*O'Brien J. Atkinson* and *Trowbridge & Atkinson*, for plaintiffs in error.

*E. W. Harris* and *Cyrus Miles*, for defendants in error.

CAMPBELL, J.

The only question in any of these cases relates to the right of a bankrupt to the surplus of his estate not exhausted by the proceedings in bankruptcy, and remaining after those proceedings have terminated, and all costs and expenses are paid, and the assignee is discharged, and all debts are extinguished.

Plaintiffs sue as heirs at law, to recover from the various defendants in these cases, who claim neither under the bankrupt nor under his assignees, certain lands once belonging to Frederick H. Steevens, who became a bankrupt and was discharged on his own petition in 1842. No creditors proved their claims, and the assignee was discharged in 1843, and the proceedings terminated, and all expenses were paid. The assignee has since died, and the law is repealed.

The objection is made that the omission of the land in the bankrupt's schedule estops him or his heirs from claiming any title or interest in it. It is somewhat difficult for us to understand how this could concern any one but the creditors and assignees, or claimants under them. The title did not pass by the schedule, and did not depend upon it. Under the bankrupt law, the whole prop-

25 MICH.—6.

erty of the bankrupt, as soon as the decree declaring him a bankrupt was made, passed *ipso facto* under the control of the assignees, "without any other act, assignment, or other conveyance whatever" (*5 Laws U. S., p. 443*); and in like manner to successive assignees superseding each other. A fraudulent omission, like other fraudulent acts, might operate in various ways to the prejudice of the bankrupt, but in no way affected the title in bankruptcy. The bankrupt was subject to be examined fully on oath at all times. And as to strangers there can be no effect given to any act, as affecting land titles, that is not competent under the law to convey or encumber them. Our laws make no provision for divesting title by disclaimer. An omission might easily be made without fraud, and the discharge of the bankrupt is such evidence of innocence as no one could assail except as the act itself authorized it.

The question then aries, what becomes of the property not required to satisfy the claims and expenses legally payable out of the assets. The only purposes requiring it under the law, were payment of debts proved, and expenses of the proceedings. All the creditors saw fit to forego their claims; and this left nothing to be paid beyond expenses, which have been satisfied.

The bankrupt law of 1841 made no provision declaring how the surplus should be obtained, or what should be done with it, and the nature of the bankrupt's rights in the residue is left to be determined by the ordinary rules of law. Under the English law which contains special directions concerning the disposal of a surplus, a previous conveyance of it by the bankrupt was held valid. *Ex parte James, 19 L. & Eq., 460.*

In *Oakey v. Bennett, 11 Howard's R., 33*, the supreme court of the United States used this language in regard to the estate of a bankrupt: "It is an admitted principle in

all countries where the common law prevails, whatever views may be entertained in regard to personal property, that real estate can be conveyed only under the territorial law;" and further: "This doctrine has been uniformly recognized by the courts of the United States, and by the courts of the respective states. The form of conveyance adopted by each state for the transfer of real property must be observed. This is a regulation which belongs to the local sovereignty."
—*Ibid.*, *p. 45*.

The state laws in regard to the transfer of estates were undoubtedly subject to the plenary power of congress over bankruptcy, and there can be no doubt of the complete force of the bankrupt law to dispose of the bankrupt's property for all the purposes designated or implied by it. But it has not attempted to deal with any subject not within its policy. When the purposes of the act are fully satisfied, it makes no further interference with the bankrupt or his interests.

It can make no special difference whether the rights of the assignees are regarded as powers or as trusts. In most respects they are quite analogous to the former. But their nature is not important, for they were broad enough to dispose of all the property, if such disposition was needed. Under our statutes, the rights of the bankrupt to what remained to him as surplus, would be the same in either case, whether regarded as the residuum of a trust, or as a title discharged of the burden of a power of disposal. The act of congress makes no provision for a reconveyance, and the discharge of an assignee would make it practically impossible. The title must be somewhere, and under these circumstances it is necessary to regard it as in the only party interested.

It is a principle of law, independent of statute, that the estate of a trustee who receives land for particular purposes, terminates when they are fulfilled. *Bayley, J.*, in *Doe d.*

*Player v. Nicholls, 1 B. & C., 336,* says: "It may be laid down as a general rule, that where an estate is devised to trustees for particular purposes, the legal estate is vested in them as long as the execution of the trust requires it, and no longer, and, therefore, as soon as the trusts are satisfied it will vest in the person beneficially entitled to it. *Doe v. Simpson, 5 East., 162,* and *Doe v. Timins, 1 Barn. & A., 530,* are authorities upon that point." In that case a transfer or surrender from the trustee or his heir, was not held necessary to create a right to maintain ejectment. And Lord Denman in *Doe v. Edlin, 4 Ad. & El., 582,* recognizes the doctrine as applicable to such cases as the present, where the trustee does not expressly take an absolute fee. It is more than questionable whether a right which passes from one to another by removal and re-appointment, without any conveyance from the outgoing to the incoming assignee, can be called an estate at all. Each one takes a very extensive power, but if he takes a trust, it would still come very clearly within the rule referred to. The act of congress does not create any estate of inheritance in the assignee himself, although he may by his official action convey the lands. His conveyance is made to have the same effect precisely "as if made by such bankrupt himself, immediately before such order" (of bankruptcy).—*p. 448, § 15.* But whatever rights vest in the successive assignees, they are official and not personal, and are not heritable or corporate.

Our statutes now in force have carried this doctrine much further than the common law, and have converted all plenary rights to the use and control of lands into legal estates.—*Comp. L. p. 824-5.* Section 3 of the chapter on uses trusts applies to existing as well as future estates, and would change the title of the bankrupt into a legal one if not such already.

Plaintiffs, therefore, as his heirs at law were clearly entitled to sue upon the title set out in the record, which is as complete as if there had been no bankruptcy.

The judgments must be reversed, with costs, and new trials granted in each case.

CHRISTIANCY, CH. J., and COOLEY, J., concurred.

GRAVES, J., did not sit in this case.