ROBERT P. TOMS, EXECUTOR OF THE WILL OF MARY W. McKINSTRY v. FERDINAND WILLIAMS, JOHN C. WILLIAMS, JAMES M. WILLIAMS, J. C. DEVEREUX WILLIAMS, THOMAS WILLIAMS, HERBERT WILLIAMS, THEODORE G. WILLIAMS, JOHN BENSON WILLIAMS, ELIZA W. SCHROEDER, JOHN R. WILLIAMS, GERSHOM MOTT WILLIAMS AND MARY JOSEPHA WILLIAMS.

*Construction of wills—Perpetuities.*

The interpretation and legal consequences of a will are the only matters that can come in question after it has been duly admitted to probate.

Courts cannot inquire into the propriety of any disposition which a testator sees fit to make of his property by a legally executed will so long as it is not unlawful; nor can they adopt astute constructions to defeat provisions claimed to be unjust.

A devise of stores attached to the freehold and forming a part of realty also belonging to the testator, covers the ground on which they stand.

Accumulations under a will, of the income of personal property for any number of lives in being and for twenty-one years longer, are not forbidden in Michigan; nor are provisions restraining the alienation of personalty for such period.

The application of rules against perpetuities depends on whether the interest devised is vested or not.

If an estate is actually vested by a will, subject only to certain trusts, the character of the trusts cannot concern those heirs at law who are not legatees.

Substance rather than form must be regarded in construing wills; and all intendments must be made to prevent a partial intestacy.

Wills should be construed if possible in favor of vesting interests; and future interests should be treated as vested where there is any present interest in the income of the property.

A devise to the minor children of a specified person or to the survivors of them, of the net accumulations of a mixed fund of realty and personalty to be paid to them annually after the youngest reached majority until a certain date, the entire estate being held in trust till then for the purpose of freeing it from an encumbrance, and to be then turned over to the devisees as tenants in common, was *held* to create a present vested estate

in the legatees; to contemplate survivorship at the testatrix's death, and not that the last survivor should take the whole estate to the exclusion of the descendants of the other legatees; and in effect to give to the same devisees the entire present and future beneficial estate subject to certain distinct and independent trusts for retaining the income during their minority and for finally freeing the estate, which were also for their benefit.

Where a trust under a will clearly designates the interests to be enjoyed and the persons who are to enjoy them, the expiration of the purposes of the trust gives such a legal character to these interests that no conveyance from the trustees is necessary to pass them.

Where a will creates vested interests subject to trusts that might otherwise suspend the power of alienation beyond two lives in being, the trusts would simply be void encumbrances and the estate would be left clear.

An estate subject to a long lease is nevertheless a present estate in possession, though there be neither direct occupation nor receipt of profits.

A lease provided for its own renewal in case the appraised value of buildings erected by the lessee should not be paid at its expiration. *Held* that a provision in a devise covering this and other property, real and personal, by which a certain sum was to be annually set aside from the income of the whole to constitute a sinking fund to pay for the buildings, was not in violation of the statute against accumulations.

A lease for years does not contravene the statutes against perpetuities; nor do such trusts as may be necessary to save estates from being sacrificed to pay encumbrances and preserve land as such for devisees.

A will devised a mixed fund of realty and personalty to certain minors, but provided that a certain sum should be annually set aside from the income arising therefrom, to free the realty devised from a lease which after testatrix's death had eighteen years yet to run, and would then have to be renewed for forty years unless the appraised value of improvements placed upon it by the lessee should be paid. The rest of the net income of the property was to be held in trust for the minors until the youngest should become of age. The will was held valid and not in violation of the statutes against perpetuities.

Comp. L., §§ 4104–6 forbids accumulations of rents and profits "for a longer period than during the minority of the persons intended to be benefited thereby." *Held* that this language is not inconsistent with a provision for accumulating until the youngest of several minors becomes of age.

The statute forbidding the accumulation of rents and profits is simply to prevent tying up real estate for purposes of accumulation

41 MICH.—70.

during extended periods so that its continued rental might keep the property entire and undisposed of, and build up a considerable fund in connection with a landed estate.

Where trustees designated by a will for any beneficial trust purpose are not required to hold any estate beyond one for a term of years, they take no greater absolute estate than is co-extensive with the trust; and as to so much of the estate as is not needed to carry out a valid trust, their authority is no more than a power and does not prevent a devolution of the estate. Comp. L., §§ 4127-8.

In Michigan a trust imposed by will for raising money out of the rents and profits to pay off encumbrances on an estate devised to minors, is valid, and the trustee can be relieved from it only by the action of all the beneficiaries after they become of age: the charge cannot be apportioned by undivided shares.

Courts are bound to consider the interests of infant legatees in an appeal from a construction of the will whether the infants have appealed or not.

Whatever a testator might lawfully have done himself he can leave to be done by trustees.

In Michigan there is no authority for charging an estate with the expenses, beyond taxable costs, of an appeal in equity by heirs at law from the construction of a will.

Appeal from Wayne.    Submitted April 17.    Decided Oct. 14.

BILL TO OBTAIN THE CONSTRUCTION of a will.    Complainant and all the defendants except J. C. Devereux, John R., Gershom Mott and Mary Josepha Williams appeal.

*G. V. N. Lothrop* for complainant.    A trust does not vest in a trustee who declines it, Perry on Trusts, § 267; and where one of two trustees refuses to act, the other may execute the trust unless it was strictly personal and to be executed by a particular individual, *In re Stevenson*, 3 Paige, 420; *King v. Donnelly*, 5 id., 46; *Burrill v. Sheil*, 2 Barb., 468; *Niles v. Stevens*, 4 Den., 403; Comp. L., §§ 4137-4140.    Where the intention is clear, real estate may be demised by the use of such words as "estate," "effects," "property," "legacy," "messuage," and "house," or "dwelling-house," 1 Jarm. Wills, ch. 23, p. 565;

*Hardacre v. Nash,* 5 T. R., 716; *Doe v. Collins,* 2 T. R., 503; *Bailey v. Bailey,* 25 Mich., 185; *Jones v. Jones,* id., 402; *De Kay v. Irving,* 5 Den., 655; *Doe v. Parkin,* 5 Taunt., 321; *Chapman's Case,* 3 Dyer, 833 b; *Den v. Trout,* 15 East, 394; *Doe v. Gwillim,* 5 B. & Ad., 122; *Rogers v. Smith,* 4 Penn. St., 93; *Bennett v. Bittle,* 4 Rawle, 339; *Blackborn v. Edgley,* 1 P. Wms., 603. A trust embracing both real and personal property may be void as to one and valid as to the other, *Harrison v. Harrison,* 36 N. Y., 548; *Manice v. Manice,* 43 N. Y., 303; *Knox v. Jones,* 47 N. Y., 389; an accumulation of rents and profits under a will for the benefit of minor legatees expires in New York as to each minor as he becomes of age, *Lang v. Ropke,* 5 Sandf. Sup. Ct., 365; *Post v. Hoover,* 33 N. Y., 593; so that trusts for accumulation may be valid for the minorities of legatees respectively, and void only for the time after those periods, *Forsyth v. Rathbone,* 34 Barb., 408; *Hetzel v. Barber,* 69 N. Y., 8; and where a minor legatee becomes of age before the testator's death the trust never takes effect as to him, *McLean v. Freeman,* 70 N. Y., 85; *Oxley v. Lane,* 35 N. Y., 340. It is not to be presumed that a testator means to die intestate as to part of his estate, 2 Redf. Wills, 616; a legatee's interest vests immediately, even though real estate is to be held for a trust term to use its profits, and then convert it into money for distribution among the beneficiaries, *Cooper v. Cooper,* 7 Jurist N. S., 178; *Leeming v. Sherratt,* 2 Hare, 14; *Edwards v. Symons,* 6 Taunt., 213; *Paterson v. Ellis' Executors,* 11 Wend., 260; *Kane v. Gott,* 24 Wend., 641; *Moore v. Lyons,* 25 Wend., 124; *Mason v. Jones,* 2 Barb., 230; *Gilman v. Reddington,* 24 N. Y., 15; *Everitt v. Everitt,* 29 N. Y., 40; *Moore v. Littel,* 41 N. Y., 76; *Livingston v. Greene,* 52 N. Y., 124; *Embury v. Sheldon,* 68 N. Y., 236; vested future estates, equitable as well as legal, are descendible, devisable, and alienable, both at common law and by Comp. L., § 4182; Perry on Trusts, §§ 321, 357; *Burgess v. Wheate,* 1 W. Bl., 128; *Cowper v. Cowper,* 2

P. Wms., 753; *Noble v. Andrews*, 37 Conn., 346; *Price v. Sisson*, 2 Beas., 169; *Croxall v. Shererd*, 5 Wall., 268; if a will contains void trusts that are not so connected with provisions otherwise valid that a severance would defeat its substantial purpose, they will be discarded if the purpose of the will can be carried out by doing so, *Haxtun v. Corse*, 2 Barb. Ch., 519; *Savage v. Burnham*, 17 N. Y., 576; an absolute gift should not be defeated by the failure of mere incidental forms contrived to carry it into operation, *Lassence v. Tierney*, 1 McN. & G., 551; *Scawin v. Watson*, 10 Beav., 202; *Gompertz v. Gompertz*, 2 Phil. Ch., 109; *Saunders v. Vautier*, Cr. & Ph., 240; *In re Chellows' Trust*, 1 Johns. & Hem., 648; *Combe v. Hughes*, 2 De G., J. & S., 657; *Harbin v. Masterman*, L. R. 12 Eq., 559; *Simmons v. Pitt*, L. R. 8 Ch. App., 978; *Williams v. Williams*, 8 N. Y., 538; *Lade v. Holford*, 1 W. Bl., 428; *Woodgate v. Fleet*, 64 N. Y., 573.

*Theodore Romeyn, Griffin & Dickinson, Prentiss & Chipman, Levi Bishop* and *Van Dyke & Brownson* for defendants appellant. Where a testator's meaning is plain from his language, it cannot be disregarded though it invalidate the will, *Van Nostrand v. Moore*, 52 N. Y., 12; *Hetzel v. Barber*, 69 N. Y., 14; *Given v. Hilton*, 95 U. S., 595; *Fosdick v. Fosdick*, 6 Allen, 41; *Sears v. Russell*, 8 Gray, 87; *Church v. Grant*, 3 Gray, 142; a trust as to personalty, exceeding the statute, may be good in a measure, unless where it violates the rule against perpetuities, Jarm. Wills, 264; *Curtiss v. Lucan*, 6 Jur., 721; Lewis on Perpetuities, 169, 574-5; where personalty is devised to the children of a person specified, they take as purchasers and not as heirs; and if the term survivors is used it means those who may survive at the time of distribution, 2 Jarm. Wills, 641-651; *Cripps v. Wolcott*, 4 Madd., 12; *Teed v. Morton*, 60 N. Y., 502; executors authorized to receive rents and profits and dispose of them for a purpose, take a legal estate in the lands rather than a mere power, *Brewster*

*v. Striker*, 2 N. Y., 19; *Leggett v. Perkins*, 2 N. Y., 305; *Leggett v. Hunter*, 19 N. Y., 445; the old common-law privilege of suspending alienability is cut down in America to two lives in being and 21 years beyond, *Cadell v. Palmer*, Tudor's Lead. Cas., 359, n: 1 Cl. & Fin., 372; 1 Jarm. Powell on Devises, 388, n. 1; *Boynton v. Hoyt*, 1 Den., 58; *Hawley v. James*, 16 Wend., 61, 133, 171–2; where a devise is void for remoteness, all limitations expectant on it are void though the object of the devise should never come into existence, 1 Jarm. Wills, 242; *Robinson v. Hardcastle*, 2 T. R., 241, 380, 781; so far as trusts in a will are void, the real estate affected by them is not disposed of, *Woodgate v. Fleet*, 44 N. Y., 1, 20, 21, n.; *Gott v. Cook*, 7 Paige, 542; a testator supposes that each part of his will is to take effect, *Leake v. Robinson*, 2 Meriv., 363; *Coster v. Lorillard*, 14 Wend., 349; where a devisor's intent is illegal, the doctrine of *cy pres* cannot be applied, but where separate interests are devised, some of which are legal and some not, a court may carry into effect so much as is consistent with law, *Amory v. Lord*, 9 N. Y., 403; *Van Schuyver v. Mulford*, 59 N. Y., 426; costs of a suit to obtain the construction of a will, which is a proceeding in the nature of a bill of interpleader and in the interest of all concerned, should be charged on the estate, 1 Redf. Wills, ch. 9, § 36, pp. 491, 495.

CAMPBELL, C. J. Complainant filed his bill to obtain the construction of a will, and settle conflicting claims under it. A decree was made below from which complainant appeals, and from which also appeals were taken by all the defendants but J. C. Devereux Williams, John R., Gershom Mott and Mary Josepha Williams.

The chief disputes are concerning the effect and validity of certain provisions which are claimed by the appealing defendants to be in violation of the policy of the statutes against perpetuities. To understand these provisions reference is necessary to the circumstances out of which the controversy arises.

The testatrix, Mary W. McKinstry, made her will on the 16th day of March, 1874, and died on the 2d of March, 1876, being a widow without descendants. Her next of kin were four surviving brothers, Ferdinand, John C., James M., and J. C. Devereux Williams, and the children of three deceased brothers (Theodore, Mott and Thomas), all of whom are made defendants. Of these, John R., Gershom Mott and Mary Josepha Williams are the children of General Thomas Williams, a brother of testatrix, who died some time before she made her will.

A considerable part of the property of testatrix was devised and bequeathed to her by a former husband, David Smart, who died about twenty years before testatrix. Among his property left to her was a business block in the city of Detroit, commonly known as the Merrill Hall property, built up under a lease granted in April, 1854, for forty years from May 1, 1854 to one Charles Waterman by David Smart and testatrix his wife, which required the lessee to improve in a manner therein pointed out, and keep up the improvements and pay all taxes and assessments and an annual rent of $8,000. Among other provisions in this lease—which was subject to forfeiture and re-entry upon default of certain conditions,—was a clause which required the lessor, his heirs or assigns, at the expiration of the term in 1894 to pay the appraised value of the improvements, or grant a second term of forty years on a rent of five per cent of the value of the land without the buildings.

No provision was made by the will whereby any relatives were made beneficiaries except J. C. Devereux Williams and the three children of Gen. Thomas Williams. All of these children were minors when the will was made. John R. Williams became of age February 15, 1876; Gershom Mott Williams February 11, 1878, and Mary Josepha Williams is still under age and will not reach majority until August 24, 1881.

Robert P. Toms and Walter Ingersoll were named in the will as executors and trustees, but Mr. Ingersoll renounced and declined to accept the appointment. The

will was duly admitted to probate, and therefore no question can arise concerning any thing but its interpretation, and the legal consequences of it. We have no authority to inquire into the propriety of any disposition which the testatrix saw fit to make, but are bound to carry out her expressed wishes, so far as they are not unlawful.

A single devise was made of certain specified property to J. C. Devereux Williams for life, with remainder to the other three devisees before named. The only question raised concerning this is as to the amount of property it covers. It is not insisted that the devise itself is imperfect, or that any of the appealing parties have interests in any thing actually covered by it.

The property is thus described: "The two stores recently erected by me on the northerly side of Michigan Grand avenue, in the city of Detroit." Counsel for a part of the appellants insisted this devise only covered the buildings, and did not convey the land on which they stand. This assumes—what is not disputed—that the testatrix had an estate in the land. If not, the controversy would be useless.

The argument on which this claim is based was ingenious, but does not seem to have legal support. The point urged that the court should be astute to defeat unjust provisions is not one to which we can give attention. If a will is legally executed, and violates no rule of law, all courts must respect the expressed design of the testatrix, and must accept her action as based on such reasons as satisfied her. The view which other persons may take of what they may think she ought to have done, can have no bearing on the construction of what she actually saw fit to do.

These stores are attached to the freehold and form a part of the realty. Their value and their availability depend on their location, and are identified with the entire property. There can be no presumption that permanent buildings when devised, were not intended to

be so granted as to be capable of enjoyment as buildings, which could not be the case if no right in the soil passed with them. It has always been competent under the rules of the common law to pass realty under the name of houses, granges, mills, or other buildings, connected with the freehold, and making its chief available value. Co. Litt., 4, 5. We do not think the claim made is tenable. And we have no doubt the devise to J. C. Devereux Williams covered the land appurtenant to the stores.

The remaining provisions of the will belong together, and the interests of the defendants and each of them in all but the store property depend on the effect to be given to these arrangements.

The testimony shows that there is a considerable amount of personalty, appraised at $71,787.88, and real property valued at about half a million of dollars. The value of the buildings on the Waterman property, now known as the Merrill Hall block, is estimated at $60,000 to $65,000. The lease required the buildings originally to cost not less than $50,000. There was no maximum fixed. Insurance is required to be kept up to the amount of $32,000.

The 3d, 4th, 5th, 6th and 7th clauses, under which the controversy arises, are as follows:

*Third.* I give, devise and bequeath all the residue of my estate, real and personal, to my executors hereinafter named, or the survivors of them, in trust.

*Fourth.* I direct my executors and trustees, or the survivor of them, to receive the rents, profits and interest, and income of my estate, hereby devised to them in trust, and to pay all taxes, assessments, and insurance on the same, and to make all necessary repairs to the buildings and improvements to or on the property hereby devised, and out of the profits, interest and income received by them, they shall after paying all taxes, assessments and insurances, set apart annually the sum of five thousand dollars, until the first day of May, 1894, for the purpose of creating a sinking fund to pay for the buildings on lots one (1), two (2), sixty-three (63) and sixty-four (64) according to the Governor

and Judges' plan of the city of Detroit, which property was on the 25th day of April, A. D. 1854, leased by the late David Smart to Charles Waterman, which lease is duly recorded in the register's office of Wayne county.

*Fifth.* I direct my executors, or the survivors of them, to invest from time to time the money so set apart for the purpose of creating a fund to purchase said buildings, on the best terms the same can be invested, and that such investments shall only be made in Government or State of Michigan bonds, or in bond and mortgages on unincumbered real estate in the city of Detroit, and on the expiration of said lease on the said first day of May, 1894, they shall pay the appraised value of the buildings on said demised premises, as provided by the terms and conditions of said lease, and take possession of said demised premises.

*Sixth.* I direct my executors and trustees, and the survivors of them, at the expiration of the minority of the youngest of the said children of my deceased brother, Gen. Thomas Williams, to pay over to said children or the survivors of them, share and share alike, all the net accumulations of my estate, except that portion thereof which is set apart to create a fund to purchase the buildings covered by said lease; after the minority of the youngest of said children, such accumulations shall be distributed annually between said children or the survivors of them, share and share alike.

*Seventh.* I direct my executors and trustees, or the survivors of them, as soon as they shall have paid for said buildings, and obtained possession of said demised premises, to transfer, convey, in fee simple, and deliver over all the property devised to them in trust, and all the interest and net income derived therefrom, which may be remaining in their hands, to the said children of my deceased brother General Thomas Williams, John R. Williams, Gershom Mott Williams, and Mary Josepha Williams, or the survivor of them, and to their heirs and assigns forever, as tenants in common.

The defendants who contest the validity of these provisions place their objections on the following grounds:

1. That the accumulation of income extends beyond the minority of John R. and Gershom Mott Williams.

2. That the accumulation of $5,000 a year is void as not authorized by the statute of uses and trusts.

3. That the gift over to the children of Gen. Thomas Williams is void for remoteness, as postponed beyond the legal period, and not within two lives in being.

41 MICH.—71.

The statutes of Michigan contain no provisions concerning accumulations of the income of personal property, or concerning restraints on its alienation. It is not claimed that personal property could not be accumulated for any number of lives in being and twenty-one years longer. None of the provisions of this will, therefore, can be held invalid as against the personal property left by the testatrix. The New York statutes have limited accumulations of personalty, and this has also been done in England by the Thellusson Act. The variance between the statutes of Michigan and those of New York, both as to restraints on alienation of personalty and trusts, creates some difficulty in applying all of the decisions in the latter state to cases arising here. Upon personal property left by the testatrix no question can arise here. The principal question underlying most of the controversy is what interest the will purports to convey to the children of General Thomas Williams. Apart from the minor · question touching the retention of the income during the minority of these children, the chief inquiry must be whether the interest passing to them is vested or contingent—that is to say whether they do or do not take interest before the Merrill Hall lease runs out in 1894. The statutes restricting perpetuities are confined to avoiding future estates that are made more remote in their vesting than two lives in being, and such arrangements as serve to postpone them. In all cases where the application of the rules against perpetuities is invoked, the character of the interest as vested or otherwise is the turning consideration. Revisor's note to Part 2, ch. 1, New York Revised Statutes. If these devises do not become operative before 1894, then there is a possible intestacy, according to the theory of the defendants who appeal. If not, then they are not interested in any of the other questions which concern their co-defendants.

It is quite important to bear in mind the precise condition of the property which is especially the occasion

of the principal trust arrangement. The Merrill Hall property came into the hands of testatrix subject to a lease which will not end until 1894. Under that lease the owner of the reversion can only resume possession, —if the lessees do not forfeit their claims,—by paying the value of all buildings then remaining on the premises. The value of the buildings now standing is said to be about $60,000. The lessees however have a right to erect other and more expensive ones if they see fit, and may fairly be expected to keep their leasehold improved to such an extent as will make it most eligible for renting. It is therefore impossible to know how much money will suffice to buy the buildings in 1894. If not so purchased, the lessees are entitled to a further term of forty years on a percentage of the appraised value of the land.

The value of these present and future buildings is therefore a large and substantial incumbrance on the estate, which cannot be redeemed before maturity without some new agreement, and which if not redeemed will make it practically impossible to dispose of the premises in parcels for nearly sixty years.

The primary purpose of the will in providing the sinking fund of $5,000 a year was evidently to get rid of this incumbrance, and put the property into a shape to be at the full disposal of the owners, whoever they may be. And whatever we may consider the full extent and character of the trust intended to be created, it is under the will designed to last only long enough to clear the incumbrance from the land.

Beyond devoting the annual amount of $5,000 to the sinking fund, the entire net income of all the estate— (that is to say, the whole gross income less taxes, insurance and repairs)—is to be paid over annually to the children of Gen. Thomas Williams after the infancy period during which it is to be retained for their benefit. The trustees have no power given them to sell or encumber any of the property, and the annual income is pay-

able equally and without any discretion. And as soon as · the Merrill Hall property becomes disencumbered, the trust ceases, and the property goes at once to the parties named, who are the same persons that up to that time receive the income.

. We have no doubt the survivorship mentioned in the will means survivorship at the death of the testatrix. The fund is a mixed fund of realty and personalty, and the interest in the annual income is continuous. The will is precise in saying that the fee when it passes shall pass to the children as tenants in common and not as joint tenants,—a requirement which would have no meaning under our statutes if the estate was to be a future one only vesting in 1894, but which would be significant in removing any ambiguity concerning joint tenancy if the estate vests at once. There is nothing in the will from which we can draw an inference that descendants of any of these children were intended to be cut off in favor of the survivors, or that the last survivor or his or her children or heirs could have been meant to take the entire estate to the exclusion of the descendants of the two other children of Thomas Williams.

As already suggested, the provisions are all valid so far as the personal property is concerned, under any theory which can be advanced, because the whole interval of delay is less than twenty-one years, without allowing for any lives in being. And so far as Merrill Hall is concerned, the income is all that Mrs. McKinstry possessed during the lease, although it is different as to the remaining realty. But in regard to all of this property, real and personal, it is plain that whatever may be the technical form of the devises, the practical effect of the will is to give to the same devisees the entire present and future beneficial estate, subject to the two trusts which are equally for their ultimate benefit, *first* of retaining the income during the infancy of the chil-. dren, and *second* of laying aside $5,000 a year out of the income to pay off the incumbrance. Each of these

purposes is a distinct trust which does not necessarily depend on the other. If the estate created by the will is a vested one subject only to these trusts, then whether they are good or bad trusts cannot concern the other heirs-at-law. If it is not vested, then other questions arise which were discussed fully by counsel.

To determine this we must look at the whole will and give it effect according to its intent, as far as that can be done lawfully. It has always been a primary rule of testamentary construction to look to substance rather than form. Our statutes favor this rule, and also require all intendments to be made to prevent a partial intestacy. The will, if carried out according to all of its provisions, is substantially a devise of the fee simple subject to a term of about eighteen years. If it is anything else in law, it will only be so because there is some rule of law which makes the estate one thing in form and another in substance.

While there has been some variance among the authorities concerning the legal distinctions between vested and contingent estates, they chiefly agree *first* in favoring the vesting of interests, and *second* in treating future interests as vested where there is any present interest in the income of the property. No case could be much stronger than the present in that point of view, because here the whole income vests, subject to an annual charge of a given sum to be taken out of it. The New York cases, which are quite as technical as any others in raising difficulties against perpetuities, are quite clear in favoring construction in aid of vesting, *Post v. Hover*, 33 N. Y., 593; *Oxley v. Lane*, 35 N. Y., 340; *Paterson v. Ellis*, 11 Wend., 260; *Kane v. Gott*, 24 Wend., 641; *Moore v. Lyons*, 25 Wend., 124; *Gilman v. Reddington*, 24 N. Y., 15; *Everitt v. Everitt*, 29 N. Y., 40; *Moore v. Littel*, 41 N. Y., 66; *Livingston v. Greene*, 52 N. Y., 118; *Embury v. Sheldon*, 68 N. Y., 227; *Manice v. Manice*, 43 N. Y., 303; *Warner v. Durant* (Ct. of Appeals,

1879). See also, *Edwards v. Symons*, 6 Taunt., 213; *Milroy v. Milroy*, 14 Sim., 48; *Mocatta v. Lindo*, 9 Sim., 56; *Murray v. Addenbrook*, 4 Russ., 407; *Lucena v. Lucena*, L. R., 7 Ch. Div., 255; *Mortimer v. Slater*, id., 322; *Muskett v. Eaton*, 1 Ch. D., 435; *Jull v. Jacobs*, 3 Ch. D., 703; *Unsworth v. Speakman*, 4 Ch. D., 620; *In re Dawes' Trusts*, 4 Ch. D., 210; *Adams v. Adams*, 6 Ad. & El. (N. S.), 866; *Meyer v. Eisler*, 29 Md., 28; *Blease v. Burgh*, 2 Beav., 221.

It is also to be borne in mind that this will disposes of a mixed fund of realty and personalty in the same way, and if the interests are contingent in the realty, they must also be contingent in the personalty, and cut off the descendants of all the children who do not survive until 1894. If this were a will of personalty alone, there are no well-founded reasons and no reliable authority for disputing the vested quality of the interests. And we are satisfied there is nothing in the will which would justify us in assuming that the testatrix desired that in any case an intestacy should exist in any part of her property, or that personalty and realty should be separated in the character of her gifts.

If our view is correct in regard to the nature of the interests disposed of, then the action of the trustees in passing the title in 1894 is not necessary to their protection and would be the mere execution of a formal transfer of what had already passed in fact. But so far as that is concerned, the authorities are clear that even if their authority is a trust in fee instead of in a less estate, the expiration of the purposes of the trust, where the persons and interests to be enjoyed are clearly designated, at once gives a legal character to those interests so that no conveyance from the trustees is necessary to pass them. In the present case the trustees could not deprive these persons of the estates falling to them in 1894, if otherwise valid, by refusing to convey. The will itself creates the rights and points out their owners. *Steevens v. Earles*, 25 Mich., 40; *Player*

*v. Nicholls,* 1 B. & C., 336; *Phipps v. Ackers,* 9 Cl. & F., 183; *Doe v. Simpson,* 5 East, 162; *Doe v. Timins,* 1 B. & Ald., 530; *Doe v. Edlin,* 4 Ad. & El., 582.

The court below in construing the will, held in substance that the will created a present and vested and not a contingent and future estate in the three children of Gen. Thomas Williams. We are of the same opinion. And this being so, there is nothing in the case requiring us, so far as the appellants are concerned, to discuss at large the effect of the statute prohibiting the creation of future estates suspending the power of alienation beyond two lives in being. If the trusts in the will would otherwise have that effect, they would merely be void encumbrances and leave the estate clear.

There is nothing in the will which requires the trustees for any beneficial trust purpose to hold any estate beyond one for a term of years, and when this is so the general doctrine is clear—as well under the statutes referred to as at common law—that they take no greater absolute estate than is co-extensive with the trust. *Darling v. Rogers,* 22 Wend., 483; *Nicoll v. Walworth,* 4 Denio, 385; *Stevenson v. Lesley,* 70 N. Y., 517. These decisions were made under a statute from which our own is borrowed, and are in the same line with *Steevens v. Earles* and the other cases before cited. As to so much of the estate as is not needed to carry out a valid trust, the authority vested in them, if any is so vested, is no more than a power, and does not prevent the devolution of the estate. Comp. L., § 4127, 4128.

The controversy, therefore, becomes very much narrowed, and no one is interested in it except the children of Thomas Williams. None of them have appealed. But inasmuch as one of them is an infant, whose interests the court is bound to consider as far as necessary,—as was held in *Gilman v. Reddington* before cited, it is proper to refer somewhat to the two trust purposes to which the testatrix undertook to subject the estate.

It is objected that the will undertakes to accumulate the income and prevent any distribution of it until the youngest of three children attains her majority, and this is claimed to be a violation of § 4104 of the Compiled Laws, which requires that in order to make an accumulation of rents and profits of lands valid "it must be made for the benefit of one or more minors then in being, and terminate at the expiration of their minority."

By section 4106 it is further enacted that "if the direction for such accumulation shall be for a longer time than during the minority of the persons intended to be benefited thereby, it shall be void as to the time beyond such minority."

And section 4105 provides that "when, in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumptively entitled to the next eventual estate."

At the time of Mrs. McKinstry's death there were two minors, Gershom Mott and Mary Josepha Williams. It would have been entirely competent on any theory to postpone the vesting of an estate to the majority of either or both of these children, as a time less than two lives in being. We have already indicated our opinion that under this will an estate does vest subject to the annual charge, and whether we regard it as vesting at the date of the will subject to the trust for accumulation and not capable of disposal during the minorities, or as only vesting at the close of these minorities, would make no difference in the practical result, because if the accumulations are only valid as to the share of each infant during his or her minority, it creates no intestacy, but the income merely becomes at once payable to each on majority, as presumptively entitled to the next estate.    *Kilpatrick v. Johnson,* 15 N. Y., 322;

*Williams v. Williams*, 8 N. Y., 525. The decree below was based on this latter theory, and is not appealed from by any party interested. We do not see that the infant Mary Josepha is prejudiced by this ruling.

But we do not feel at all satisfied that the statute requires such a construction. Its language certainly is quite consistent with an accumulation for any number of infants until all come of age, and such an accumulation is really no more than for the minority of a single life in being. We are not disposed to regard the New York decisions as so far binding on the construction as to compel us to accept a rule which the language does not plainly justify. Our legislation has not adopted the New York statutes entire, and has not only left out of the new prohibitions against perpetuities all personal property, but has entirely departed from them by allowing trusts for any lawful purpose beyond the statutory enumeration to which trusts are confined in New York. While therefore we shall not disturb the decree in this particular, because not appealed from by any party interested in changing it, we are not prepared to say that it is framed in this regard as it should have been.

We also refrain from expressing an opinion whether the postponement of the distribution of income until the majority of the infants amounts to such an "*accumulation*" as comes within the terms of the statute. Courts are required to construe with some strictness such new and ambiguous statutory provisions as introduce confusion and anomalies into existing systems, and avoid provisions theretofore valid, without introducing a complete or harmonious plan in their stead. The English courts in applying the Thellusson Act, which is, so far as it goes, the origin of all our recent statutory changes concerning perpetuities, have intimated that no accumulation comes within the prohibition which arises out of an implied and not out of a direct requirement to accumulate—which word is held to mean investing and keeping invested all income and its fruits as they accrue. *Elborne v. Goode*,

41 MICH.—72.

14 Simons, 165; *Lombe v. Stoughton*, 12 Sim., 304; *Blease v. Burgh*, 2 Beav., 221; *Marquis of Bute v. Harman*, 9 Beav., 320.    The doctrine of those cases is unfavorable to any extension of the language of the statutes beyond what is plainly required.   And we find our own statutes not only differing in their scheme materially from the English and New York statutes from which they were chiefly borrowed, but very blind, and not by any means easy to harmonize.    The New York courts have found it impossible to lay down any intelligible doctrine which is harmonious, and we do not think it wise to attempt any full discussion not required by the case before us.    The statutes are anything but clear and satisfactory, and it would be a bold assertion to say we can discover a well defined system or policy in their provisions.

The principal argument was upon the effect of the clause for accumulating $5,000 a year to redeem the buildings on the Merrill Hall property.    This is an accumulation of money in the strictest sense of the term, and it is not an accumulation during infancy. Whether it is an accumulation of rents and profits is a different question.   It is impugned on the double ground of being an excessive accumulation, and also as suspending alienation.   These two grounds are independent.

It cannot, we think, come within the statute concerning accumulations.   Undoubtedly it is possible that a portion of the rents and profits of real estate may become necessary to provide this amount out of the estate.    But it is set apart not as the whole or any aliquot part of the rents and profits of all or any part of the lands of the testatrix.   It is simply a given sum of money to be used when collected out of the gross income of the entire estate, without any reference to any particular fund.   It is not to be supposed that the statute was intended to impose disabilities generally and indefinitely upon money simply because it at some time

or other came out of rents. When once in hand it cannot be said that there is any more reason for stopping the investment of that from one source rather than the same amount from another. The whole purpose of the statute is as part of a scheme to prevent lands from being indefinitely tied up. The section forbidding permanent accumulations is part of the chapter concerning estates in real property, and should be construed accordingly. We think its obvious policy is simply to prevent tying up real estate itself for purposes of accumulation during extended periods when its continued rental serves the double purpose of keeping the property entire and undisposed of, and of building up a considerable fund in connection with a landed estate. A specific sum, coming out of a mixed fund of land and personalty, and having no proportion or specific part chargeable on the land separately, does not come within the mischief of the law. If the distinction were merely colorable, and evasive, so as to make the fund substantially and really an accumulation of rents and profits of land, there would be no difficulty in so holding it. But no such subterfuge appears in this case, and no such consequence should follow.

The other ground, namely, that this provision operates to prevent alienation and make a perpetuity rests upon the theory that the trust created by this will absorbs the whole estate in fee simple, and holds it suspended until 1894.

Under the old law alienation might be suspended for any number of lives in being and twenty-one years, and of course for twenty-one years as a distinct period, independent of lives. This was settled in *Cadell v. Palmer*, 1 Cl. & F., 372: 10 Bing., 140. This decision was not made until several years after the adoption of the New York Revised Statutes, although its principle was previously regarded as generally received. In the Thellusson Act the period of twenty-one years was adopted as more reasonable and safer than life estates in guarding against

remote vesting. It first came into the law as a fair and not unreasonable period, and our own statutes have retained a period of infancy as allowable after the expiration of two lives in being in case of a contingent remainder made to take effect on the determination of a prior remainder in fee during minority. § 4083. No intelligible reason has ever been given for discarding a certain period and preserving an uncertain one, and it can only be looked upon as one of those notions which become enacted as statutes without any such principle involved as is of any use in seeking for the legislative intent outside of the precise line of the language.

The most valuable portion of this large estate was, and all of it might have been as this was by the Smart lease, tied up for purposes of actual possession and management, for eighteen years after the death of testatrix, and on default of carrying out the object of this particular trust, for forty years longer. But this disposal is of unquestionable validity. The estate of Mrs. McKinstry, although subject to this long lease, was a present estate in possession. This doctrine was held and explained in *Campau v. Campau*, 19 Mich., 116, as not requiring either the direct occupation or receipt of profits. A lease for years has never been held obnoxious to laws against perpetuities. The concurrent action of lessee and lessor can always pass a clear estate, and discharge any burdens or conditions created by the lease.

In guarding against remote entanglements the legislative action which relates to perpetuities very carefully avoided the prevention of such trusts as might be necessary to save estates from being sacrificed or disposed of to pay charges or encumbrances. It is no part of the statutory policy to prevent land from being preserved as land for devisees; and when charges exist or are created which might involve either a sale or other burdensome interference with its actual enjoyment, trusts are expressly authorized, without being subjected

to the perpetuity clauses, in order to save the estate from such worse consequences. And it has been held that such trusts do not come within the law of perpetuities.

By § 4124 of the Compiled Laws, the right to create trusts is confined to active trusts, and these are embraced under five heads. The 3d, 4th and 5th subdivisions, which cover nearly all imaginable purposes capable of clear definition, are made in terms subject to the rules and limitations prescribed in the same title, of which the rules concerning perpetuities were the chief. The New York Revised Statutes contained a restriction of trusts to four heads, substantially the same as the first, second, third and fourth of our own statute. There as here, the first and second heads are not made subject to the rules restricting the others. The *first* authorizes a sale of lands for the benefit of creditors. This of course would be senseless if restricted. The *second* authorizes a trust to "sell, mortgage, or lease lands, for the benefit of legatees, or for the purpose of satisfying any charge thereon."

A sale here, as in the first case, would bear no restrictions and they would be foreign to it. A mortgage in fee would not differ essentially from a sale, but might lead to it. But a mortgage of rents and profits, or a lease for the purpose of raising money to pay legacies or charges could not be measured by a life or lives in being without becoming substantially useless. No one could raise money in the market on such securities, and such trusts would be nugatory. Unless the property could be devoted to those purposes as long as the necessity existed, it might as well be let alone. The object of such trusts, if honestly created, is not to tie up land for purposes of delay, but to make such use of it as will save the title and secure its enjoyment which might otherwise be either lost or longer postponed. They are not within the mischief of the law, and are therefore very wisely excluded from its language.

It must be borne ·in mind that none of these trusts come within the law of perpetuities unless a similar disposal of the land by the owner himself independent of any trust would be within the same mischief. We have already seen that a lease for years is valid, and that leases are not required by our laws to be made for lives. It has never, so far as we know, been supposed that a Welsh mortgage of rents and profits instead of the fee was contrary to law, either for a fixed term or until the debt should be paid. It cannot be any more dangerous to public policy, neither is it any more within the language of the statute, to do through the medium of trustees that which the testatrix could have done herself in person. If the lease as originally drawn had required the lessees to pay $3,000 a year to Mr. Smart or his heirs or assigns, and $5,000 a year to some one in trust for investment to purchase the buildings, the case would have been substantially what it is now, and it would be very difficult to point out any illegality in it. If the money is to be paid or laid up for a purpose which is lawful, the statute makes the means lawful by which the end is to be secured.

No courts have been more astute to trace out possible infractions of the policy against perpetuities than those of New York, and no case is supposed to be more indicative of that purpose than the leading case of *Hawley v. James*, 16 Wend., 61. In that case an estate was made subject to a large number of trusts which were held unlawful as not confining the suspension of the power of alienation to two lives in being. Among the other purposes for which the trustees were directed to hold the lands and other property and take the rents and profits, were an annuity for the life of the wife of testator, five other annuities to individuals, one annuity to a corporation to be paid until the trustees out of the rents and profits could save enough to make a permanent investment for the same purpose, and several specific sums, which were also to be paid out of the rents and profits.

While Judge Bronson, who was extreme in his views, regarded all of these purposes as bringing the trusts within the prohibitions against perpetuities, Judges Nelson and Cowen, sustained by the remaining members of the court, held that they came within the second subdivision of the statute and were valid, as trusts to pay legacies or charges. In *Darling v. Rogers*, 22 Wend., 483, the construction of this statute was again considered somewhat, though not necessarily involved, and the validity of trusts to pay charges against the land was assumed as unquestionable. We have discovered nothing in conflict with this doctrine, and the words of the statute are not ambiguous.

In *Briggs v. The Earl of Oxford*, 11 E. L. & Eq., 265; 1 DeG., M. & G., 363, where a power given to trustees to fell timber extended beyond the rules against remoteness, and was claimed to be void, it was decided, after a reargument on that point, that inasmuch as it was to pay a debt created by contract, it was good while the contract lasted, and the doctrine against perpetuities had nothing to do with it. In that case there was no such saving statute as our 2d subdivision, but the case was decided on broader grounds.

We think the law of this State has not directly or inferentially forbidden the raising of money out of rents and profits to pay off encumbrances or charges, and that inasmuch as the liability which the testatrix saw fit to charge on her entire estate was one created long before the property to be benefited came into her hands, there is no room for regarding the will as evasive or dishonest.

We are of opinion that this trust is a valid trust, and that the trustee can only be relieved from it by the action of the beneficiaries after all of them become capable of acting for themselves. The charge is not one which can be apportioned by undivided shares.

We are of opinion that the decree below should be modified in this particular.

We regret that we cannot affirm so much of the decree as provides extra compensation for the counsel representing the heirs at law. Neither the circuit court nor this court has any jurisdiction in a case in equity to charge the estate in controversy with burdens not recognized by law. This suit in no way differs in that respect from any other litigated suit in equity, where nothing but taxable costs is under the control of the court. Those we can regulate, and we think that the suit is one where the expense should be paid by the estate so far as we can require it. The defendants appealing will therefore recover their costs and counsel fees in both courts. The decree to be modified so as to conform to our decision.

The other Justices concurred.