KATHERINE K. C. BARNES v. KATHLEEN M. MARSHALL ET AL.

*Will—Construction—Vested estate—Remainder.*

The question involved in this case is whether the will, to construe which the bill is filed, gives to the wife of the testator the property therein mentioned absolutely or for life. And it is

held that the wife did not take an absolute vested estate, but that it was the intention of the testator to place the funds in the hands of his executors, to be paid over to his wife from time to time, and at her death, if anything remained, such remainder to be divided among the other legatees as mentioned in the will.

Appeal from Grand Traverse. (Ramsdell, J.) Argued April 26, 1894. Decided September 27, 1894.

Bill to construe a will. Defendant Marshall appeals. Decree reversed, and one entered in this Court in accordance with the opinion. The facts are stated in the opinion.

*Hatch & Wilson,* for complainant.

*Brennan, Donnelly & Van DeMark,* for appellant.

LONG, J. The bill was filed in this cause to obtain a construction of the last will of Smith Barnes, deceased. The case was heard below upon bill and answer, and a decree entered there, finding that an absolute estate in all the legacies mentioned in the first paragraph of the will became immediately vested, on the death of the testator, in Katherine K. C. Barnes, widow of the deceased; that by the fifth paragraph an absolute estate in all the rest, residue, and remainder of the estate, except the legacy of $600, mentioned in the second paragraph, to Kathleen M. Marshall, and the legacies mentioned in the third paragraph, to the executors of said will, became vested immediately in Katherine K. C. Barnes, widow of said deceased; and that the widow is entitled to receive the estate so vested in her at once. From this decree Kathleen M. Marshall appeals. The following is a copy of the provisions of the will and codicil:

"*First.* I give and devise to my wife, Katherine Kip Clarke Barnes, and her heirs and assigns, all of lots numbered seven (7) and eight (8), of block numbered thirteen (13), in the village of Traverse City, according to the recorded plat thereof, in the

county and State aforesaid, being our home, known as 'Ingleside,' together with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining; to have and to hold the premises above described to my said wife and to her heirs and assigns forever. I give and bequeath to my said wife all my furniture, clothing, jewelry, musical instruments, paintings, engravings, pictures, statuary, books, bedding, household goods, implements, and utensils of whatever name or kind, horses and carriages; also all life and accident insurance policies on my life, and all money which may be derived from the same. I also give and bequeath to my said wife the sum of $30,000, to be paid to her at the rate of $3,000 each year, reckoning from the time of my decease. I direct that all the above legacies and, bequests to my said wife shall be paid in priority to all other legacies or bequests herein given.

"*Second.* After the foregoing legacies and bequests are paid, if there shall be anything left, I give and bequeath to Mrs. Sylvia Tapping, of Fowlerville, Michigan, the sum of $200, the same being for services rendered; to Kathleen M. Marshall, now of Traverse City, aforesaid, the sum of $600, as extra compensation for services rendered; and to Lucretia A. Gillett, of Saline, Washtenaw county, Michigan, the sum of $200. In case of the death of any of the legatees mentioned in this paragraph previous to the payment of the bequest or bequests herein given to such deceased legatee or legatees, then the said bequest or bequests to said legatee or legatees shall be inoperative and void, and shall revert to my estate.

"*Third.* I give and bequeath to each of the following named persons, as my executors, viz., Perry Hannah, Charles A. Crawford, and Reuben Hatch, the sum of $300.

"*Fourth.* It is my express desire that at my decease the affairs of my estate be so surrounded by bounds that my said wife shall receive the greatest possible benefit from my estate and the bequests herein given her. To that end I declare that she shall at once enter into possession of our home, 'Ingleside,' and all the property, goods, and effects mentioned in the first paragraph of this will, and at once obtain, on payment of the same by the insurance companies, the amount of my life and accident policies, thinking that will furnish sufficient ready money for her immediate needs. I direct that if the insurance money, or any portion thereof, should not be paid, or if anything more than the usual delay in the payment of the same should occur, the deficiency be made up and immediately paid to my said wife from the legacies hereinbefore given to her. To provide for the continued comfort of my wife, I desire that she shall receive such amounts yearly as she shall require for her comfort and convenience, and would pre-

fer that, after the fund first paid over shall have been exhausted, or nearly so, the remainder be paid to her in yearly installments of $1,500 or $2,000, and that the portion of her legacies remaining in the hands of my executors be invested in a perfectly safe manner, and at a fair rate of interest, keeping the same, so far as may be, intact against more pressing needs and increasing years.

"*Fifth.* All the rest, residue, and remainder of my estate, after the payment of the legacies hereinbefore mentioned, I give, devise, and bequeath to my said wife.        —

"*Sixth.* But in case of the decease of my said wife prior to the payment to her of all or any of the legacies herein bequeathed to her, I direct that the remainder of said legacies unpaid shall immediately, on the death of my said wife, revert to my estate, and be expended by my executors in the payment of other legacies, if the same shall not have been already paid; and that such remainder shall, in such case, be first applied in payment of legacies hereinbefore mentioned, which legacies shall then be paid in priority to all others herein given, if there shall be sufficient of said remainder left unpaid to my said wife to pay the same. If there shall not be sufficient left, then whatever there shall be shall be applied *pro rata* in payment of the legacies hereinbefore mentioned. If in case of the death of my said wife, as aforesaid, before the payment to her of all or any of her said legacies, after the payment of the legacies hereinbefore mentioned, there shall still be a surplus of said remainder of the legacies to my said wife unpaid, I give and bequeath the same, not exceeding $16,000, to the following persons, and in the following manner, namely: Three-eighths of said surplus to Miss Kathleen Marshall, of Traverse City, Michigan; three-eighths to my brother-in-law, Henry K. Clarke, of Ocoee, Orange county, Florida; and one-fourth to the Traverse City Ladies' Library Association, or its successor, as a library fund, to be known and designated by my name. If there shall be any of said surplus remaining over and above said $16,000, I give and bequeath one-eighth of the same to Allie Crawford, daughter of Charles A. Crawford, of Traverse City, one-fourth to said Kathleen M. Marshall, one-eighth to Mary E. Hooker, of Traverse City, aforesaid, one-fourth to said Dr. Henry K. Clarke, and one-fourth to the Traverse City Ladies' Library Association, or its successor.

"*Seventh.* I appoint my said wife, Katherine Kip Clarke Barnes, Perry Hannah, and Charles A. Crawford, all of Traverse City, aforesaid, and Reuben Hatch, of the city of Grand Rapids, in the county of Kent, and State aforesaid, executors of this, my last will, and instruct and empower them, as my executors, to dispose of my estate as directed to in my said will, and also to make sale of and convey by deed or other sufficient conveyance my real estate as well as personal property, as they shall deem it for the

best interests of my estate. Their attention is called to certain schedules of my property and life and accident insurance policies on my life, which will be found with this will, and which show a correct statement, as near as may be, of the value of my estate at the dates named in said schedule. In case of the death of one or more of my executors, I direct that the survivor or survivors have full authority to execute my said will, and do all things thereunder as though all my executors were living."

*Codicil:* "*Whereas,* by my said will, in the second paragraph thereof, I bequeathed to Mrs. Sylvia Tapping, of Fowlerville, Michigan, the sum of $200, and to Lucretia A. Gillett, of Saline, Washtenaw county, Michigan, the sum of $200, in the event of there being anything left of my estate after the payment of certain other legacies in my said will provided for: I now declare that it is my will that the aforesaid legacies to the said Mrs. Sylvia Tapping and Lucretia A. Gillett be revoked, and I do hereby revoke the same, and I direct that the money bequeathed to them in my said will as aforesaid be distributed in accordance with the remaining provisions of my said will, the same as though no such legacies had been mentioned in my said will."

The testator died on June 19, 1891, and thereafter the will was duly admitted to probate, and letters testamentary were issued to the complainant and Reuben Hatch. An inventory of the estate was made, from which the value was found to be upwards of $100,000. The complainant has received the real estate, goods, chattels, and insurance money mentioned in the first paragraph of the will, and two installments of $3,000 each of the $30,000 mentioned in the first paragraph. The construction given to the will by the court below is in accordance with the claim of the complainant.

Counsel for Kathleen M. Marshall contend that the remainder of the testator's estate over and above the absolute gifts to complainant was to be invested by the executors in good securities, and that a fund of $30,000 was to be created, from which complainant should be paid $3,000 each year, reckoning from the time of her husband's death; that, if complainant should die at any time during the 10 years immediately following her husband's

death, the balance of the $30,000 remaining in the hands of the executors should at once revert to the testator's estate, and be expended in the payment of other legacies; that, even if the entire gift of $30,000 became vested at the death of the testator, it is liable to become divested as to such portions as may remain in the hands of the executors at the time of complainant's death. Counsel for defendant further contend that as to the remainder of the estate it was the intent of the testator that, if his wife should live to exhaust the fund of $30,000, she should have out of the remainder such sums yearly as might be necessary for her support in the manner she had always lived, and no more; that nowhere in the will is the wife given unlimited power of disposition, which is usually attached to absolute gifts. The argument of counsel is that—

"This power, by the seventh paragraph, is lodged in the executors, who are authorized to sell his real estate and personal property as they shall deem for the best interests of his estate; and, by the language of the fourth paragraph, she is expressly limited to such sums yearly out of the remainder as she shall require for her comfort and convenience. How much of the remainder would be required for this purpose was a matter of conjecture. She might not require any of it. There was, in his mind, a possibility that she might require all of it. She might live many years, and the amount of this remainder, by depreciation in value, might decrease in the hands of his executors, so that the wife would, before her death, require all, or nearly all, of it. Having this in mind, he desired that the remainder should be held by the executors, and not divided among his other legatees until the possibility that his wife might require it had been removed by her death; and, after directing the manner in which the remainder should be paid to her, in order that there might be no doubt about his wishes to keep it intact against the possibility of its being required for her use, he adds the words of the gift of the fifth paragraph, but immediately qualifies the gift by the proviso at the beginning of the sixth paragraph, to the effect that if she shall die before

she has received all or any of her legacies, which presupposes that they shall be paid to her as he had already directed, then such remainder shall immediately revert to his estate to, pay other legacies. He directs that from the remainder at the death of his wife, or the 'surplus,' as it is called in the will, a sum not exceeding $16,000 shall be divided among certain persons, whom he names,—three-eighths of it to appellant, and three-eighths to his wife's brother, Henry K. Clarke. The will then continues: 'If there shall be any of said surplus remaining over and above said $16,000, I give and bequeath one-eighth of the same to Allie Crawford, daughter of Charles A. Crawford, of Traverse City; one-fourth to said Kathleen M. Marshall,' etc. From this language the conclusion is irresistible that the testator anticipated that at the death of his wife there would be at least $16,000 of his estate unpaid to his wife by his executors, and he directs in positive terms how it shall be disposed of. This limitation in remainder shows that in the opinion of the testator he had not given an absolute estate, by the words of the fifth paragraph, to the wife, but that they were qualified by the direction immediately following in the sixth paragraph, that at her death the remainder unpaid to her should revert to his estate."

Counsel contend that by this construction only can all the clauses of the will be harmonized.

It is evident that by the construction contended for by counsel for complainant the later clauses of the will would have no force; and, indeed, it is claimed that, the gifts to complainant being absolute, the bequests over to the defendants are void for repugnancy. Many cases are cited by counsel for complainant to establish the proposition that these bequests are void for repugnancy to the prior absolute gift to the complainant. If the gifts to complainant are to be treated as absolute, there would be no escape from such conclusion; but we are not prepared so to hold, and we think the language used by the testator does not bring the case within the rule laid down in the cases cited. If the claim of counsel be correct, we must hold that the latter part of paragraph 4 and all of para-

graph 6 are meaningless words, and were used by the testator for no purpose whatever.

The general rule for the interpretation of wills is that it is the duty of courts to give full and complete effect to the testator's intention, and carry out such intention, if it be lawful. *Rock River Paper Mill Co. v. Fisk*, 47 Mich. 212; *Cummings v. Corey*, 58 Id. 494; *Eyer v. Beck*, 70 Id. 179. Courts are bound to carry out the real design of the testator as derived from a comparison of all the parts of the will, and the meaning of all words and phrases must, if possible, be harmonized. *Bailey v. Bailey*, 25 Mich. 185.

In *Hamlin v. Express Co.*, 107 Ill. 443, the rule is stated that "the latter part of the will is to be considered no less than the former part; and, to the extent there is repugnance, the language of the former part is to be read as modified by that of the latter part."

In *Smith v. Bell*, 6 Pet. 68, the will declared:

"I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, legacies, and funeral expenses; which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely; the remainder of said estate after her decease to be for the use of the said Jesse Goodwin."

The court held that this was a bequest to the testator's wife for life, with remainder to Jesse Goodwin, the son. Chief Justice Marshall, in delivering the opinion, said:

"It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife, or which would more clearly express that intention. But the testator proceeds: 'The remainder of said estate after her decease to be for the use of the said Jesse Goodwin.' These words give the remainder of the estate after his wife's decease to the son with as much clearness as the preceding words

give the whole estate to his wife. They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife. If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out, yet both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last member of the sentence than the first. No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole. Either the last member of the sentence must be totally rejected, or it must influence the construction of the first so as to restrain the natural meaning of its words: either the bequest to the son must be stricken out, or it must limit the bequest to the wife, and confine it to her life. The limitation in remainder shows that in the opinion of the testator the previous words had given only an estate for life. This was the sense in which he used them."

See, also, *Chase v. Ladd,* 153 Mass. 126; *Kent v. Morrison,* 153 Id. 137.

In *Cousino v. Cousino,* 86 Mich. 323, a bill was filed for the construction of a will. It appeared that the testator, after providing for the payment of his debts, bequeathed the residue of his estate, real and personal, to his wife; and the will recites: "After her death, or sooner if she chooses to, to be divided among my children or their heirs, share and share alike." Complainant (the widow) insisted that the absolute title to the property, both real and personal, was by the will vested in her. It was said by this Court:

"We think there can be no ambiguity as to the intent of the testator. The will conveyed only a life-estate to complainant. If he intended to devise the absolute title to complainant, the last clause of the above provision would be meaningless."

So it may be said of the will in the present case.    If the testator intended to give to his wife the entire estate, except these small legacies, the entire sixth clause and the most of the fourth clause of the will would be entirely meaningless.    It is apparent that the testator had in mind the comfort of his wife, and intended to make ample provision for her care and maintenance; but that he intended to give the estate to her absolutely cannot be gathered from reading the whole instrument.    We are satisfied that the contention of counsel for defendant Kathleen M. Marshall is correct.    By the first paragraph of the will the wife does take the property therein mentioned absolutely, except the fund of $30,000.    This $30,000 was to be invested by the executors, and out of the fund she was to be paid $3,000 annually; but by the sixth clause it is evident that, should the wife die before the whole of this $30,000 was paid over, any balance remaining was to revert to the testator's estate; and also by the sixth clause it is provided that the remainder of the property unused at her death should, at her death, revert to his estate, and be disposed of in accordance with the sixth clause of the will.    We are led to the conclusion that the wife did not take an absolute vested estate, but that it was the intent of the testator to place these funds in the hands of his executors, to be paid over to the wife from time to time, and at her death, if anything remained, such remainder to be divided among the other legatees, as in the will mentioned.    This trust the executors must carry out under the direction of the probate court of Grand Traverse county.    The trust is to keep the estate invested in good securities, and to pay the widow from time to time the amounts set apart for her, and such other sums as she shall require for her comfort and convenience, as the probate court may from time to time determine,

102 Mich.— 17.

The decree of the court below must be overruled, and a decree entered here in accordance with this opinion. The defendant Kathleen M. Marshall will recover her costs of both courts. There seems to be no controversy but that she is entitled to the present payment of the legacy of $600.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred with LONG, J.

McGRATH, C. J. (dissenting). While I concede that the testator did not intend that the title to the $30,000 mentioned in the first paragraph of the will should immediately vest in his widow, but instead designed that the unexpended balance of such sum should be disposed of as directed in the sixth paragraph, I do not concur in the conclusion that the remainder, after setting apart the $30,000 and the payment of the legacies provided for in the second and third paragraphs, becomes, upon the death of complainant, subject to the provisions of paragraph 6. The instrument should receive such a construction as will give effect to each and all of its provisions. The fifth paragraph gives to the widow the residue remaining after the segregation of the $30,000 and the payment of the other legacies, and, it seems to me, contemplates the assignment of that residue to the widow. The instrument nowhere provides that such residue shall remain in the hands of the executors. The sixth paragraph applies to the unexpended balance of the $30,000. The language of that clause refers to the remainder of unpaid legacies, or to such legacies as shall not have been paid over. The latter part of clause 4 simply expresses a preference. The instrument contemplates a fund set apart for the use of the widow, which, in the event of her death, may not be exhausted. Concerning this fund, the testator was solic-

itous. He prefers it to the legacies to strangers, and intended that it should be set apart, subject to investment and control by the executors, and not to any contingencies that might attend its payment over to the widow. A provision for the payment to the widow of a fixed annuity, and such further sums as were necessary, during her natural life, and for distribution at her death of the residue, would have been very simple; but the conclusion arrived at by the majority gives that effect to the instrument, treats the setting apart of the $30,000 as without purpose, and eliminates from the instrument, and renders entirely superfluous, the fifth paragraph, which is clear and explicit.