CARY v. TOLES.

1. WILLS—CONSTRUCTION—REPUGNANCY—INTENT.

Although the words used in the first part of the residuary clause of a will seemed to indicate an intention of the testatrix to vest the estate in her granddaughter subject only to the life estate of her daughter, yet where the following words indicate an intention that the granddaughter should have only a life estate and then the residue should go to her issue, if any, and if not, then to the three sons of testatrix, or their children, effect will be given to such intention in construing the will.

2. PERPETUITIES—ESTATES—WILLS.

A will creating a life estate in testatrix's daughter, a life estate in her granddaughter, after the daughter's death, title to vest in the issue of the granddaughter, if any, at the termination of the life estates; if not, title to vest in testatrix's three sons or their children, *held*, not to violate the statute as to perpetuities, since the power of alienation has not been suspended beyond the period of two lives in being at the creation of the estate.

Appeal from Berrien; White (Charles E.), J. Submitted January 14, 1920. (Docket No. 89.) Decided April 10, 1920.

Bill by Fannie B. Cary and another against Wilford C. Toles and another for the construction of a will. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*G. M. Valentine,* for plaintiffs.

CLARK, J. The will of Elizabeth H. Toles, admitted to probate November 1, 1906, after making some cash bequests, had the following residuary clause:

"All the rest and residue of my estate, real, personal and mixed, and the use thereof, I give, devise

and bequeath unto my daughter Fannie B. Cary, to have and to hold the same to her during her natural life; and at the death of my said daughter, all the property devised and bequeathed to her as aforesaid, or so much thereof as may then remain unexpended, I give, devise and bequeath unto my granddaughter, Sara Cary, to have and to hold the same to her forever, provided, however, if the said Sara Cary shall die without lawful issue, then, in that case, the share and portion of my estate hereby given and devised to her, or so much thereof as may then remain unexpended, I give and devise unto my said sons, Wallace H., Wilford C., and Herbert L., share and share alike, the children of each (if any), in case of his death, to have, receive and enjoy his share forever; and provided, furthermore, if the said Sara Cary shall die and leave her surviving lawful children, her issue, then in that case, it is my will, notwithstanding anything in the contrary herein, that such children of the said Sara Cary, share and share alike, shall have, receive and enjoy all that share, portion, reversion and remainder of my estate hereinbefore given, devised and bequeathed unto her, the said Sara Cary, or so much thereof as may then remain unexpended."

The testatrix died seized of real estate in the city of Benton Harbor. The daughter, Fannie B. Cary, and the granddaughter, Sara Cary, now Sara Cary Bondy, survived the testatrix and are the plaintiffs in this suit. Mrs. Bondy has one child, Elizabeth Beulah Bondy, about eight years of age, who by next friend has been made party defendant. When this suit was commenced Herbert L. Toles, a widower, was deceased without issue. Wallace H. Toles and his wife were also dead leaving one child 27 years of age from whom plaintiffs have quitclaim deed of the real estate. The remaining son, Wilford C. Toles, is made party defendant. The bill of complaint was filed to obtain a construction of the will and for a decree that the real estate was devised in fee to plaintiff Sara Cary Bondy subject only to the life estate of her mother, Fannie B. Cary. A decree was entered dismissing the

bill of complaint. Plaintiffs have appealed. Plaintiffs' contentions are that the residuary clause in the will, after bestowing upon the daughter, Fannie B. Cary, a life estate, devised the fee therein absolutely to Sara Cary Bondy, and that the subsequent clauses in the will are void, *first,* because they are repugnant to the clause giving the fee to the property to Sara Cary Bondy and as an attempt to cut down an absolute gift to her; and *second,* as contravening the statute against perpetuities.

Repugnancy. The principles of interpretation of wills are stated by Justice STEERE in *Bateman* v. *Case,* 170 Mich. 620:

"In the early case of *Sisson* v. *Seabury,* 1 Sumn. 235, Fed. Cas. No. 12,913, Judge Story thus speaks of the embarrassment attending resort to precedent in construing wills:

"'The cases almost overwhelm us at every step of our progress; and any attempts even to classify them, much less to harmonize them, is full of the most perilous labor. * * * To lay down any positive and definite rules of universal application in the interpretation of wills, must continue to be, as it has been, a task if not utterly hopeless, at least of extraordinary difficulty.'

"The construction of a will is not merely determining the meaning of a word or phrase found in it, or ascertaining the sense of a particular sentence or form of words, though both are involved, but it demands the drawing of such conclusions from the whole as are manifestly within the spirit of the text, though they may be beyond the direct expressions there found. It is the substance rather than the form which is to be considered. *Toms* v. *Williams,* 41 Mich. 552. The construction should always be in harmony with the expressed or implied intention of the testator unless contrary to some positive rule of law. The principle is clearly stated by Justice MOORE in *Robinson* v. *Finch,* 116 Mich. 180.

"'The first thing to determine is, What was the intention of the testatrix, as expressed in the instrument, taking it in its

entirety, giving to the words used the meaning which it is evident the testatrix gave to them? For it is the cardinal principle of interpretation of wills to carry out the intention of the testator, if it is lawful and can be discovered. *Bailey* v. *Bailey,* 25 Mich. 185; *Eyer* v. *Beck,* 70 Mich. 181; *Glover* v. *Reid,* 80 Mich. 233; *Schehr* v. *Look,* 84 Mich. 263; *Cousino* v. *Cousino,* 86 Mich. 323; *Jones* v. *Deming,* 91 Mich. 481. * * * In *Hamlin* v. *United States Express Co.,* 107 Ill. 443, it is said:

" ' "The latter part of the will is to be considered no less than the former part, and, to the extent there is repugnance, the language of the former part is to be read as modified by that of the latter part."

" 'See, also, *Barnes* v. *Marshall,* 102 Mich. 248; *Gadd* v. *Stoner,* 113 Mich. 689.'

"See, also, Page on Wills, § 470; Schouler on Wills, p. 559."

See, also, *Fecht* v. *Henze.* 162 Mich. 52, and cases cited.

And we quote from opinion of Justice MOORE in *Robinson* v. *Finch,* 116 Mich. 182:

- "We think, however, the true rule is as stated by Chief Justice Marshall in *Smith* v. *Bell,* 6 Pet. (U. S.) 68, where the will disclosed a bequest to the wife which, standing alone, would give the estate to her absolutely, but other words in the will indicated that the testator intended to place limitations upon the legacy to the wife. The opinion reads:

" 'It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife, or which would more clearly express that intention. But the testator proceeds: "The remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin." These words give the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife. They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife. If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged

from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out; yet both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last member of the sentence than the first. No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole. Either the last member of the sentence must be totally rejected, or it must influence the construction of the first so as to restrain the natural meaning of its words; either the bequest to the son must be stricken out, or it must limit the bequest to the wife, and confine it to her life. The limitation in remainder shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them.'"

It must be conceded in the instant case that the testatrix in the first part of the residuary clause to and including the word "forever" could not have used words better fitted to give her estate to her granddaughter subject only to the life estate of the daughter. It must also be conceded in this case that authorities may be found which support the contention of the appellants and that authorities may also be found supporting the contention of appellees and it is difficult, if not impossible, to harmonize these decisions, but we think the present tendency of the courts is toward the equitable rules of construction which have been quoted. Considering the question before us with these cardinal principles in mind, we have no hesitation in gathering from the four corners of this will a definite intention on the part of the testatrix to give a life estate in the property to her daughter, Fannie B. Cary; that after the death of Fannie B. Cary the granddaughter, Sara Cary Bondy, should have the use of the same during the period of her natural life; that upon the death of Sara Cary Bondy the residue of the estate should vest in her issue, if any, and that, in the event that Sara Cary Bondy died

without issue, then the residue of the estate should go to the three sons of testatrix and to their children in case of their death.

The statute as to perpetuities. Sections 11532, 11533, 3 Comp. Laws 1915. The statute provides that there shall be no suspension of the power of alienation for a longer period than during the continuance of two lives in being at the creation of the estate. The estate was created at the death of the testatrix. *Mullreed* v. *Clark*, 110 Mich. 232. Upon the death of testatrix the daughter, Fannie B. Cary, and the granddaughter, Sara Cary Bondy, were living and as we have construed the will each was to have a life estate. Upon the death of Sara Cary Bondy the fee will vest absolutely in her issue in case such issue survive, but if no issue shall survive her, then the fee will vest absolutely in others. Upon determination of the second life estate the fee will vest absolutely. The power of alienation has not been limited or suspended beyond the period of two lives in being at the creation of the estate. A parallel case is *McInerny* v. *Haase*, 163 Mich. 364, in which it was held that a will creating a life estate in the testator's widow, a life estate in his daughter after the widow's death, title to vest in a granddaughter if living at the termination of the life estates; if not, title to vest in surviving grandchildren, does not violate this statute.

The decree is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.