## ABRAHAM JACKSON, Executor, *vs.* ROBERT ROBERTS.

The rule, that by a devise or bequest to individuals by name the share of one dying before
the testator will not go to the survivors, may be controlled by the testator's intention ap-
pearing in other parts of the will that the heir at law shall not take such share.

A testatrix made a small pecuniary bequest to her only child, adding, " he being already
possessed of sufficient property, no larger legacy or provision for him by me is thought
needful or desirable;" and, after some other bequests, gave the residue of her property
" to A., B., [both then of age,] C., D. and E., the children of" a deceased adopted daugh-
ter of the testatrix, " said children taking equal shares, and the issue of any deceased
child or children taking the shares of their respective parents by representation;" C., D.
and E. to receive their shares upon coming of age, " and if any one or more of them, the
said C., D. and E. shall die before arriving at full age, leaving no lawful issue living at
the time of such decease of her, him, or them (in case more than one of them shall die),
respectively representing, then the share or shares in my said property, belonging or

coming to any one or more of them, shall go and I hereby give the same in equal shares to the survivors of the said children here next enumerated, namely, said B., C., D. and E , and the lawful issue of any of said B., C., D. and E., who may have deceased, to be entitled to the same portion of the share or shares, to be distributed as above mentioned, as his or her parent would have been, if then living." B. and D. died in the lifetime of the testatrix, without children and unmarried. After the death of D. and before that of B., the testatrix executed a codicil appointing another executor, and ratifying and confirming her " said will in all respects." *Held,* that the shares bequeathed to B. and D. went to A., C. and E., the surviving children of the adopted daughter, and not to the heir at law.

BILL IN EQUITY by the executor of the last will of Elizabeth Roberts to obtain a decision upon the construction of said will. The case was heard upon the bill and answer, which exhibited these facts :

Elizabeth Roberts, on the 10th of June 1851, made her last will, the second article of which was as follows : " I give to my son, Robert Roberts, the sum of twenty dollars; my said son being already possessed of sufficient property, no larger legacy or provision for him by me is thought needful or desirable."

By the sixth, seventh and eighth articles of her will, the testatrix bequeathed certain sums to a trustee, with directions to invest the same and pay the income thereof to certain persons during their lives, and, at the decease of each, " to pay the said principal sum of money, in such proportions as he, said trustee, shall see fit, with the advice of my executor, he then living, to the children of Arthur and Mary H. French, who may be living at the time of the decease of " the beneficiary named, " and to the issue of any deceased child or children then living." The residuary clause was as follows :

" *Article ninth.* All the rest, residue and remainder of my estate, both real and personal and mixed, wherever situated or however described, whether derived by devise or inheritance from my son Robert, or in any other way, I give, devise and bequeath to Elizabeth, Ellen, Edward, Grace and Mary, the children above mentioned of Arthur and Mary H. French, both late of said Boston, and both now deceased, to them, their heirs, executors and administrators forever ; said children taking equal shares, and the issue of any deceased child or children taking the shares of their respective parents by representation ; and it

is my will, that the shares of my said property, in this article ninth thus given to the said Edward, Grace and Mary, shall be paid to each of them when they respectively attain to full age, but not until then; and that such shares, until such respective attainment of full age, shall be kept invested by my executor, or by whomsoever shall have the care of the same; and for this purpose I wish my executor to request of the judge of probate for Suffolk County the appointment of some suitable person for this purpose; the income to be appropriated to the support of said Edward, Grace and Mary; and if any one or more of them, the said Edward, Grace and Mary, shall die before arriving at full age, leaving no lawful issue living at the time of such decease of her, him, or them (in case more than one of them shall die), respectively representing, then the share or shares in my said property, belonging or coming to any one or more of them, shall go and I hereby give the same in equal shares to the survivors of the said children here next enumerated, namely, said Ellen, Edward, Grace and Mary; and the lawful issue of any of said Ellen, Edward, Grace and Mary, who may have deceased, to be entitled to the same portion of the share or shares to be distributed as above mentioned, as his or her parent would have been, if then living."

Mary French was an adopted daughter of the testatrix, and the latter during the last forty years of her life lived with Mrs. French and her children. At the time of the making of the will, Mrs. French and her husband Arthur were dead, and their daughters Elizabeth and Ellen were of age. Their daughter Grace died in 1852, under age and unmarried; and Ellen died unmarried in 1854. By a codicil executed on the 26th of September 1853, the testatrix ratified and confirmed her "said will in all respects," and appointed the plaintiff to be executor thereof, the executor previously named having died. The testatrix died on the 10th of December 1855. Robert Roberts was her only child and heir at law, and claimed the property bequeathed to Grace and Ellen French as lapsed legacies.

This case was argued at Dedham in October 1857.

*J. G. Jackson*, for the plaintiff.

*G. M. Browne,* for the defendant. The bequest to Ellen clearly lapsed; there is no devise over. *Hayden* v. *Stoughton,* 5 Pick. 528. *Prescott* v. *Prescott,* 7 Met. 141. *Hooper* v. *Hooper,* 9 Cush. 122, 130. The bequest to Grace was void, she being dead at the time from which the will speaks, namely, the republication at the date of the codicil. *Mills* v. *Boyden,* 3 Pick. 213 *Hayden* v. *Stoughton,* 5 Pick. 528. 6 Cruise Dig. tit. 38, *c.* 2 §§ 15, 16, 21. 1 Williams on Executors, (4th Amer. ed.) 179 & note, 181, 183. *Haven* v. *Foster,* 14 Pick. 534. *Brimmer* v *Sohier,* 1 Cush. 118. *Gray* v. *Garman,* 2 Hare, 268.

The residuum was given to Elizabeth, Ellen, Edward, Grace and Mary, not as a class, but *nominatim. Barber* v. *Barber,* 3 Myl. & Cr. 688. The words are, " they taking equal shares," which denote a severance. 2 Williams on Executors, 1251, 1252, 1254. And in case of the decease of any one, his or her share was to go, not to all the rest, but to a part, excluding Elizabeth.

The bequest to Grace, being void, does not go to those who were substituted for the legatee, but to the heir, who is not to be disinherited by implication, but only by an actual gift to another. *Gray* v. *Garman,* 2 Hare, 268. *Christopherson* v. *Naylor,* 1 Meriv. 320. *Waugh* v. *Waugh,* 2 Myl. & K. 41. 1 Jarman on Wills, 740. 2 Williams on Executors, 925, note. Ram on Wills, 257. *Hayden* v. *Stoughton,* 5 Pick. 528. *Denn* v. *Gaskin,* Cowp. 657. *Baxter* v. *Losh,* 14 Beav. 612. *In re Harris,* 7 Exch. 344. *Perkins* v. *Micklethwaite,* 1 P. W. 275.

There is no coupling of the sixth, seventh and eighth articles with the ninth. Those bequests are of distinct legacies, given to different persons at different times and in different contin gencies, and depending on the discretion of the trustee.

METCALF, J. The single question now for decision is, whether the legacies to Grace French and to Ellen French are lapsed, by reason of their having died during the life of the testatrix. If they are lapsed, what was bequeathed to Grace and to Ellen is intestate property, and Robert Roberts, the only heir at law of the testatrix, is entitled to it. We apply the word " lapsed " to both legacies, without inquiring whether, in its strict technical meaning, it is applicable to the legacy given to Grace.

It is a rule of the common law, that a legacy lapses, or is extinguished, by the death of the legatee while the testator is alive. This rule does not apply to legacies given to two or more jointly, (in joint tenancy,) but does apply to legacies given to two or more as tenants in common. And it is repeatedly stated, in the books, that when an aggregate fund is bequeathed to several legatees, to be divided among them, *nominatim*, in equal shares, if any of them die before the testator, what was intended for them will lapse. But where a legacy is given to a class of persons, in general terms, as tenants in common, the death of one or more of them before the testator will not cause a lapse of any part of the fund, but the survivors of the class will take the whole. Lovelass on Wills, (12th ed.) 448. 2 Williams on Executors, (4th Amer. ed.) 1036, 1045, 1046. 1 Roper on Legacies, (2d Amer. ed.) 481–486.

This doctrine concerning legacies given to classes of persons rests on the intention of the testator, as manifested by his will; his intention in this, as in all other cases, if it be consistent with the rules of law, being the guide of courts in the construction of a will.

In the case at bar, the argument for the heir at law is, that a gift, by will, to individuals described by name, though they may constitute a class, shows the testator's intention to give to them only as individuals. And this seems to be the established general rule of construction. So Lord Cottenham strongly states it in *Barber* v. *Barber*, 3 Myl. & Cr. 697, on a view of the decisions upon this point. " A gift to a class," he says, " implies an intention to benefit those who constitute the class, and to exclude all others; but a gift to individuals described by their several names and descriptions, though they may together constitute a class, implies an intention to benefit the individuals named. In a gift to a class you look to the description, and inquire what individuals answer to it; and those who do answer to it are the legatees described. But if the parties to whom the legacy is given be not described as a class, but by their individual names and additions, though together constituting a class, those who may constitute the class at any particular

time may not, in any respect, correspond with the description of the individuals named as legatees. If a testator give a legacy to be divided amongst the children of A. at a particular time, those who constitute the class at the time will take; but if the legacy be given to B., C. and D., children of A., as tenants in common, and one die before the testator, the survivors will not take the share of the deceased child." Subsequent cases in England have been decided on the same general rule. *Bain* v. *Lescher*, 11 Sim. 397. *Boulcott* v. *Boulcott*, 2 Drewry, 25. See also *Frazier* v. *Frazier*, 2 Leigh, 642; *Mebane* v. *Womack*, 2 Jones Eq. 293.

But, as this rule of construction depends on the intention of the testator, it is clear that his intention cannot be conclusively inferred from the mere fact that he mentions, by name, the individuals who compose a class. It is only a *prima facie* rule. Lord Cottenham, in the case just cited, says the testator may undoubtedly give a right of survivorship *inter sese*, by expressly directing it. See also *Doe* v. *Abey*, 1 M. & S. 428. And it is not to be doubted, that when the intention of survivorship is in any other way plainly shown by the will itself, or by the will and such evidence of extrinsic facts as is legally admissible for the purpose of showing it, such intention must prevail. No rule of law gives an inflexible sense and effect to a bequest made to children of a family, by their several names, nor to a bequest to them " equally " or " in equal shares." The construction is to be made, not solely on the bequest itself, but on the bequest taken in connection with the context. *Knight* v. *Gould*, 2 Myl. & K. 298. The word " equally " says Lord Thurlow, has been held to give a tenancy in common in a legacy, " but that is always with reference to the other parts of the gift. The general intent of the testator will overrule the word ' equally,' rather than the word ' equally ' shall overrule the general intent of the testator." *Frewen* v. *Relfe*, 2 Bro. C. C. 224. In that case a residue, given to executors equally, was held, upon the whole of the words, to be given to them as joint tenants. See also *Armstrong* v. *Eldridge*, 3 Bro. C. C. 215, and *Anderson* v. *Parsons*, 4 Greenl. 486. We may therefore safely adopt the conclusion of Lord Chancellor

Sugden, in *Shaw* v. *M'Mahon*, 4 Dru. & War. 438, that if we can discover in this will sufficient evidence of the intention of the testatrix that the remaining children should take the share of the residue originally bequeathed to Grace and Ellen, there is authority to give effect to that intention. We are of opinion that sufficient evidence of such intention appears in this will.

The testatrix had no real estate, and only one child. She gave to him a small legacy, and declared that no larger provision for him was thought by her to be needful or desirable. The residue of her property she bequeathed to the five children, naming each of them, of a deceased adopted daughter, who, with those children, had lived with the testatrix, and were all the children (as was admitted at the bar) who survived their mother. This was in June 1851. In 1852, Grace French, one of the five children, died. Before September 26th 1853, the executor, who was appointed by the will, died; and on that day the testatrix added a codicil, in which no change was made in the disposition of her property, but she ratified and confirmed the original will, in all respects, except that she appointed another person to be executor. At that time, though she must have known that Grace French — one of her family — was dead, and that the bequest to her could not be confirmed, yet she left the bequest to the five to stand as originally made. This clearly indicates that her original intention was to make the residuary bequest to the children, as a class, and her belief that she had done so; otherwise, it is to be presumed that she would have undertaken to dispose, by the codicil, of Grace's share, which by her death had failed of effect. Unless this construction be given to the will and codicil, the consequence would have been, if Ellen had outlived the testatrix, that one fifth of the residue bequeathed to the five children would have gone to he son of the testatrix, from whom she had expressly withheld, both in the original will and in the codicil, everything except a definite legacy; and that, as Ellen died before the testatrix, he would now take two fifths of that residue. In *Shaw* . *M'Mahon*, already cited, a fund was given by will, to be divided in equal parts among all the testator's children living at his death.

A life annuity of £300 was also given to W., one of his children. By a codicil, the testator revoked what he had given to W., except the annuity. It was decided that W.'s share of the fund should go to the other children. Otherwise W., whom the testator intended to exclude from all interest, except the annuity, would take a portion of that very share, as one of the next of kin. "This clearly," said the chancellor, "was not his intention, and there is no rule of law which compels me to adopt this construction. On the contrary, the authorities are in favor of the opposite construction."

When the testatrix confirmed her will by the codicil, she knew that Grace could not, and intended that Robert should not, take any part of the residuary bequest. To whom, then, did she intend that bequest should go?

Upon the whole instrument and the admitted relation which, at the time when it was made, existed between the testatrix and those for whom it provides, the court are all of opinion that it was her intention to dispose of the whole of her property — to make the residuary bequest to the children of Mrs. French, as a class — and to exclude her son. What was thus bequeathed is to be divided among the three children who survived the testatrix. *Decree accordingly.*