DES GRAND CHAMP v. DUFLO.

1. WILLS—INTERPRETATION—INTENT.
    In order to determine the intent of a testator, the instrument is
    to be considered as an entirety giving effect to every part,
    and emphasizing substance rather than mere form.

2. SAME—INTESTACY—STATUTES.
    In Michigan the law requires all intendments to be made so as
    to avoid a partial intestacy.

3. SAME.
    By a clause in a will whereby the testator provided that his
    entire estate should go to his "legal heirs absolutely in the
    proportions to which they might be entitled under the pro-
    visions of the statute" if he died intestate, excepting three
    beneficiaries who were given bequests of money in a pre-
    ceding clause and who were to receive only the portion so
    given as their full share of such estate, it was not intended
    to give to the heirs provided for by such clause the same
    shares they would obtain in an intestate distribution, but
    testator's purpose was to divide the estate among the heirs
    not excepted in the proportions they would receive under
    the statute, leaving no part of the property undisposed of.

4. SAME—PERPETUITIES.
    A clause devising land and other property to one beneficiary
    during his life, giving him control of the same, followed by
    a further clause declaring that it was testator's wish to keep
    such property intact and that it should remain unsold, oper-
    ated merely as a request addressed to the conscience of the
    devisees. In so far as a restriction on its alienation may
    have been attempted, the clause was void.

Appeal from Wayne; Hosmer, J. Submitted Janu-
ary 15, 1912. (Docket No. 66.) Decided March 12,
1912.

Bill by Bartholomew Des Grand Champ and others
against Peter Duflo and others for the construction of the
will of John B. Duflo, deceased. From a decree for de-
fendants, complainants appeal. Affirmed.

*Robert M. Dalton* (*Brennan, Donnelly & Van De Mark,* of counsel), for complainants.

*Horace H. Rackham* and *Alfred Lucking,* for defendants.

BLAIR, J. John B. Duflo, an unmarried man, on April 28, 1902, made a will containing a number of specific legacies and devises. The instrument contained eight numbered paragraphs, as follows:

"*First.* I desire that my debts, if any, expenses of my last sickness and funeral shall first be paid.

"*Second.* I direct that my brother, Peter J. Duflo, shall have the entire income from and the entire control of the property situated in Grosse Pointe on the lake shore, known as the Fishery; together with the 13 acres connected therewith and said property shall not be sold nor shall any attempt be made to interfere in any way with the authority and control of my said brother, Peter Duflo, of said premises. I direct that he shall have the power to rent said premises and to handle same in the same manner as we have done in the past. He shall, however, from the income from said premises, pay or cause to be paid the taxes levied thereon.

"*Third.* I give and bequeath to my nephew, Henry Hunce, as and for his full share in my estate, the sum of five hundred dollars.

"*Fourth.* I give and bequeath to my niece, Elizabeth Hunce, as and for her full share in my estate, the sum of five hundred dollars.

"*Fifth.* I give and bequeath to my nephew, Bartholomew Des Grand Champ, as and for his full share in my estate, the sum of one thousand dollars. All of said bequests, however, to be paid out of the money on hand at the time of my death. If there is not sufficient money to pay the same at the time of my death, then I direct that my executors, hereafter named, shall pay the legacies after they have received sufficient money from mortgages or from the net income from my estate to pay same. I do not wish that any property shall be sold for the purpose of paying said legacies.

"*Sixth.* I give, devise, bequeath all the estate of which I may die possessed to my legal heirs, absolutely in such proportions to which they might be entitled under the

provisions of the statute if I die intestate excepting, however, the said Henry Hunce, Elizabeth Hunce and Bartholomew Des Grand Champ, who shall receive only the portion given them by paragraphs three, four and five of this will, which is intended to be as for the full share in and to my said estate.

"*Seventh.* I hereby name and appoint my nephews, William and John Des Grand Champ, as executors of this will, directing my executors, however, not to interfere in any way with the possession and control of the Fisheries, hereinbefore mentioned, which custody and control I have given to my brother, Peter J. Duflo, so long as he shall live.

" *Eighth.* It is my wish that the property hereinbefore mentioned as the Fisheries and the 13 acres connected therewith remain unsold, and that my heirs after the death of my brother, Peter J. Duflo, who is given control thereof during life, appoint some suitable person to act as trustee for the others and keep said premises rented, and the income after paying therefrom the necessary expenses in keeping said premises in good repair divided among all of my legal heirs except those mentioned in the third, fourth and fifth paragraphs of this will. I make this request because it was the wish of my father that the Fisheries remain unsold and be known as the Duflo property."

On his death, the will was duly probated. The persons named as executors qualified and administered the estate. Duflo left four sets of heirs, so that if he died intestate, or if any of his property was intestate property, the same would be inherited in four equal proportions, as follows: Peter Duflo, a brother, one-quarter; Josephine Springer, a sister, one-quarter; Bartholomew Des Grand Champ, John Des Grand Champ, and William Des Grand Champ, children of a deceased sister, one-quarter; Henry Hunce and Elizabeth Hunce, children of a deceased sister, one-quarter. In due course of administration the executors filed a final account and petitioned the court for its allowance, and in the same application asked that the court enter an order distributing the estate, and alleging that Peter Duflo, Josephine Springer, and John and William Des Grand Champ were the sole persons interested and

the persons entitled to take all of the estate. The complainants accepted and receipted for their several legacies in September and October, 1905, and on November 14, 1905, a final decree was made assigning all of the residue of the estate to the above-named defendants. The above-named complainants did not appeal to the circuit court from this decree. The five others did; but, it appearing that they had no inheritable interest, their appeal was dismissed by the circuit court.

The bill herein was filed February 17, 1906. An amended bill was filed December 7, 1906, praying:

"That the will of John B. Duflo be set aside and held for naught, as being void under the statute of the State of Michigan, against perpetuities, and being more particularly sections 8796 and 8797 of the Compiled Laws of Michigan for 1897, being sections 14 and 15, chapter 237 of said Compiled Laws, pertaining to real property; and that his legal heirs be permitted to share equally in the undisposed portion of his real estate that has not been disposed of by the will of John B. Duflo, deceased, and remaining as intestate property belonging to the estate of John B. Duflo, deceased; and that the said will be construed by this court."

One of the defendants, William Des Grand Champ, filed a plea to the whole bill, setting up the probate decree of distribution as *res adjudicata*. After full argument, Judge Mandell held this plea to be good and ordered the bill to be dismissed, unless complainants wished to amend. The complainants filed amendments to the bill February 15, 1907, by which they set forth, among other things, that no personal notice was served on them of hearing on the petition and that the notice published in the Detroit Legal News (being devoted to the publication of matters pertaining to courts exclusively) was not a sufficient notice. The defendants answered March 29, 1907. Replication was duly filed. The case was heard May 14, 1910. No evidence was put in by the complainants. The defendants introduced the proceedings of the probate court, and the appeal proceedings in the circuit court

showing the dismissal thereof. Judge Mandell reaffirmed his previous ruling that the probate decree was a complete bar, and also held that the true construction of the will gave the complainants no interest in the estate except their legacies, and he thereupon dismissed the bill.

Complainants appeal to this court, contending:

(1) That paragraph 6 of the will gives to the defendants only the same interest in the estate which the law would give them, and therefore the will is inoperative as to such residue, and such residue passes under the law to all the regular heirs.

(2) That such paragraph gives them only what they would take without a will, and therefore the other portion of the estate is intestate and such portion, being one-third of the residue of the estate, goes to all the heirs, as heirs.

(3) That paragraphs second and eighth attempt to suspend the power of alienation of the " Fishery " in perpetuity, and therefore they are void and the "Fishery" is intestate estate.

(4) That the probate decree of distribution is not *res adjudicata: First*, because there was no personal service; *second*, because such decree could not affect real estate.

The counsel for defendants claim:

(1) That the probate decree of November 14, 1905, awarding and turning over all of the residue of the estate to the defendants, was final and binding on all of the world, and is *res adjudicata* as to the whole bill.

(2) That paragraph 6 explicitly gives all of his estate, except legacies, to defendants in certain proportions fixed, and therefore there is no intestate estate.

(3) That no part of the estate is intestate, neither the whole of the residue nor any portion thereof.

(4) That paragraphs 2 and 8 are simply the expression of a wish, not a mandatory direction; but if they had been couched in mandatory language they would be void, not only as against the law of perpetuities but as in conflict with the absolute estate created by paragraph six; and that therefore paragraph 6 controls the disposition of the "Fishery."

It is apparent that the principal questions raised by the briefs of counsel depend, in the main, for their solution

upon the interpretation to be given to the sixth clause of the will. The primary object in the interpretation of a will is to ascertain the intent of the testator, considering all its clauses together and giving effect, if possible, to every part. *Foster* v. *Stevens,* 146 Mich. 131 (109 N. W. 265) ; *Gregory* v. *Tompkins,* 132 Mich. 205 (93 N. W. 245); *Thurber* v. *Battey,* 105 Mich. 718 (63 N. W. 995).

"It has always been a primary rule of testamentary construction to look to substance rather than form. Our statutes favor this rule and also require all intendments to be made to prevent a partial intestacy." *Toms* v. *Williams,* 41 Mich. 552 (2 N. W. 814).

See, also, *Mann* v. *Hyde,* 71 Mich. 278 (39 N. W. 78).

By the second clause of the will the testator gives to his brother Peter the income of the Fishery property, with the connected 13 acres, for life only, as shown by the seventh clause. By the third, fourth, and fifth clauses he gives to his two nephews and niece named therein cash legacies, and makes it perfectly plain that he intends that they shall have nothing from his estate except what he gives them in those clauses.

Bearing in mind the testator's intention that the complainants should have no further share in his estate, we do not think there can be any reasonable doubt that it was his intention by the sixth clause to give the entire remainder of his estate to his other legal heirs (the defendants), in such proportions as they would have received if he had died intestate and they had been his only heirs; that is to say, the brother taking one share, the sister one share, and the two nephews taking one share between them. In our view, this clause should be construed as excepting the three complainants from the number of his legal heirs, as though it read: I give, devise, bequeath all of the estate of which I may die possessed to my legal heirs (excepting, however, the said Henry Hunce, etc.), absolutely, in such proportions to which they might be entitled, etc.

The testator did not intend to give his entire estate to

all of his legal heirs in accordance with the statute of distributions, neither did he intend to give only such portion to defendants as they would have inherited if he had died intestate. The authorities relied upon by complainants, therefore, have no application.

We do not regard the eighth clause of the will as a mandatory provision, but as a request addressed to the consciences of the heirs to whom he had given the fee of the Fishery property. *Schram* v. *Rogers*, 168 Mich. 340 (134 N. W. 13).

Furthermore, the fee is devised to the defendants, and their interests alone are affected by the provisions of the eighth clause. Therefore the restrictions of the eighth clause as to the right of alienation are void. *In re Estate of Schilling*, 102 Mich. 612 (61 N. W. 62); *Latimer* v. *Waddell* (N. C.), 3 L. R. A. (N. S.) 668, and cases cited in note.

In view of the above conclusions, it becomes unnecessary to consider the question of *res adjudicata*.

The decree is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.